UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSE AND MARIA OLIVEIRA,
    *Plaintiffs*,

v.

SAFECO INS. CO. OF AM. &
CAMBRIDGE MUT. FIRE INS. CO.,
    *Defendants*.

No. 3:18-cv-338 (VAB)

**RULING ON MOTION TO DISMISS**

Jose and Maria Oliveira ("Plaintiffs" or "the Oliveiras") filed this lawsuit against Safeco Insurance Company of America ("Safeco") and Cambridge Mutual Fire Insurance Company ("Cambridge," and together with Safeco, "Defendants") in Connecticut Superior Court, Judicial District of Tolland. Compl., ECF No. 1-2. Safeco immediately removed the case to this Court. Notice of Removal, ECF No. 1.

The Oliveiras then moved to amend their Complaint. Pls.' Mot. for Leave to Amend Compl., ECF No. 18. The next day, the Court granted the motion. Order, ECF No. 20.

The Amended Complaint, First Am. Compl., ECF No. 18-1, alleges that Safeco breached its contract with the Oliveiras, Am. Compl. ¶¶ 6–24, and violated the Connecticut Unfair Insurance Practices Act, CONN. GEN. STAT. § 38a-816, *et seq.* ("CUIPA"), and Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 42-110a, *et seq.* ("CUTPA"), *id.* ¶¶ 6–41.[1]

Safeco now has moved to dismiss the Oliveiras' Amended Complaint. Mot. to Dismiss, ECF No. 27.

---

[1] Cambridge has not moved to dismiss the Oliveiras' amended Complaint. As a result, the Court does not review the claims against Cambridge, except as necessary to address the issues raised in and decided in Safeco's motion to dismiss.

For the reasons that follow, the Court **DENIES** Safeco's motion to dismiss.

I.  FACTUAL AND PROCEDURAL BACKGROUND

   A.   Factual Allegations[2]

In 1993, the Oliveiras allegedly purchased their home in South Windsor, Connecticut, which was allegedly built in 1986. Am. Compl. ¶ 7.

From 1993 to 2012, Safeco allegedly insured the property. *Id*. ¶ 8. Since 2012, Cambridge has allegedly insured the property. *Id.* ¶ 44.

Sometime in February of 2017, the Oliveiras allegedly noticed that the basement walls of their home had a series of horizontal and vertical cracks. *Id*. ¶ 10. They allegedly "consult[ed] with area professionals" about the cracking, *id*. ¶ 10, and "learned that the form of 'pattern cracking' found in the basement walls of their home was due to a chemical compound found in certain concrete walls constructed in the late 1980s and the early 1990s with concrete most likely from the J.J. Mottes Concrete Company," *id*. ¶ 12.

They also allegedly learned that "[t]he aggregate used by the J.J. Mottes Concrete Company in manufacturing the concrete in that particular time period contained a chemical compound which, with its mixture with the water, sand and cement necessary to form the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble." *Id.* ¶ 13.

The basement walls of the Oliveiras home have allegedly "suffered a substantial impairment to their structural integrity." *Id*. ¶ 15.

On May 31, 2017, the Oliveiras allegedly notified Safeco of the cracking in their basement. *Id*. ¶ 18.

---

[2] All factual allegations are drawn from the Amended Complaint.

2

On July 28, 2017, Safeco allegedly denied their claim. *Id.* ¶ 20.

Safeco has allegedly denied at least three similar claims. *Id.* ¶ 38.

**B.    Procedural History**

On February 26, 2018, the Oliveiras sued Defendants in state court. Compl., ECF No. 1-2. That day, Safeco removed the case to this Court. Notice of Removal, ECF No. 1.

On April 11, 2018, the parties filed their joint 26(f) report. Joint Report of Rule 26(f) Planning Meeting, ECF No. 16.

On April 16, 2018, the Oliveiras moved to amend their Complaint. Pls.' Mot. for Leave to Amend Compl., ECF No. 18. The next day, the Court granted that motion. Order, ECF No. 20.

On April 23, 2018, the Court convened a telephonic scheduling conference. Min. Entry, ECF No. 22. The next day, the Court issued a scheduling order. Scheduling Order, ECF No. 23.

On May 23, 2018, Cambridge answered the Amended Complaint. Answer, ECF No. 25.

On October 11, 2018, Safeco moved to dismiss the Oliveiras' Amended Complaint. Mot. to Dismiss, ECF No. 27.

On November 1, 2018, the Oliveiras opposed Safeco's motion to dismiss. Pls.' Opp., ECF No. 29.

On November 29, 2018, Safeco replied. Reply in Supp. of Mot. to Dismiss, ECF No. 32.

On August 21, 2019, the Court heard oral argument on the pending motion and reserved decision. Min. Entry, ECF No. 37.

**II.    STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. FED. R. CIV. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working

principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

### III. DISCUSSION

#### A. The Timeliness of this Lawsuit

"It is well settled that insurance policies are construed and enforced under principles of contract law." *Discuillo v. Allstate Ins. Co.*, No. 3:17-CV-234 (KAD), 2019 WL 499255, at *2 (D. Conn. Feb. 8, 2019) ((citing *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 462 (2005) and *Galgano v. Metro. Prop. & Cas. Ins. Co.*, 267 Conn. 512, 519 (2004)). "Where such

a contract contains a provision 'requiring an action to be brought within a particular time period' the provision is binding and enforceable." *Id*. (citing *Roberts v. Amica Mut. Ins. Co.*, No. 3:14-CV-1589 (SRU), 2015 WL 7458510, at *3 (D. Conn. Nov. 24, 2015) and *Voris v. Middlesex Mut. Assurance Co.*, 297 Conn. 589, 597-600 (2010).

Safeco argues that the Oliveiras' claims are untimely because Safeco insured their property until 2012 and they did not bring suit until 2018. Mem. of Law in Supp. of Mot. to Dismiss ("Safeco Mem."), ECF No. 28, at 8–12.

The Oliveiras argue that Safeco may be liable under the terms of the insurance contract or Connecticut law. Pls.' Opp. 9–17.

Safeco insured the Oliveiras' property until 2012. Am. Compl. ¶ 8. The relevant insurance contract stipulated either a twelve-month or eighteen-month suit limitation. Pls.' Opp. at 13 n.5 (claiming that an eighteen-month suit limitation was in effect and that "[t]he "Suit Against Us" provision did change during the time that Safeco insured the Oliveiras' home."); Safeco, "Your New Safeco Homeowners Policy," ECF No. 28-20, at 25 ("Suit Against Us. No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage."). As a result, under the relevant provision, the Oliveiras had until 2013 or 2014 to file this lawsuit, where the loss or damage occurred during the time period the property was covered. *See Discuillo*, 2019 WL 499255, at *3 ("Where such a contract contains a provision 'requiring an action to be brought within a particular time period' the provision is binding and enforceable.").

The Oliveiras do not dispute the validity of this provision in their Safeco contract. Pls.' Opp. at 13. Nor do they "deny that they first discover[ed] the damage to their home in February of 2017," *id*. at 9, or first brought suit in 2018, *id*. at 13–15. Rather, they argue that Safeco's

policy language "compels the use of a multiple injury or continuous injury trigger for progressive losses," *id*. at 10, and that "Safeco's mechanical application of the suit limitation provision is contrary to the law." *Id*. at 13.

The Court agrees, in part.

"Historically, [general liability insurance policies have] been written on an accident or occurrence basis . . . . According to the express language of the occurrence basis . . . the insurer is obligated to defend claims and pay for covered 'bodily injury' . . . where the injury is caused by an occurrence and takes place during the policy period." *Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co*., 264 Conn. 688, 698, n.12 (2003) (quoting J. STEMPEL, LAW OF INSURANCE CONTRACT DISPUTES (2002 Sup.) § 14.09[a][1], p. 14–41.). In cases involving long-term exposure to harmful agents, courts have addressed the problem of identifying when an injury or loss is covered by an insurance policy "with four definitions of the trigger of coverage:

> (1) Manifestation. These courts hold that an injury subject to a claim occurs when it manifests itself or becomes reasonably capable of diagnosis.
>
> (2) Exposure. These courts hold that a policy is triggered when the claimant is exposed to the alleged cause of the disease regardless of when the injury became manifest or capable of diagnosis.
>
> (3) Injury-in-fact or actual injury. These courts hold that the occurrence giving rise to the third-party claim happens at the time when the body's defenses to the cause of the disease have been 'overwhelmed' so that significant injury has become inevitable.
>
> (4) Multiple, Continuous, or Successive trigger. Under this approach . . . an occurrence has happened whenever the claimant was exposed to the cause of the injury, was injured in fact, or the injury became manifest. Consequently, any of these events trigger the applicable insurance policy in force at the time of the event.

*Id*. (internal quotations and citations omitted).

Separately from the question of when a triggering loss occurred, "[c]ourts in this district have determined on multiple occasions that the 'date of loss' for purposes of an insurance policy's 'Suit Against Us' provision is the date on which the insured learned or should have learned of the covered loss.'" *Kowalyshyn v. Excelsior Ins. Co.*, No. 3:16-CV-00148 (JAM), 2018 WL 888724, at *5 (D. Conn. Feb. 13, 2018) (quoting *Belz v. Peerless Ins. Co.*, 204 F. Supp. 3d 457, 465-66 n.2 (D. Conn. 2016)).

Connecticut courts have applied an "exposure" trigger in cases involving "progressive, long latency diseases such as asbestosis and mesothelioma." *Kowalyshyn*, 2018 WL 888724, at *3 (quoting *R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co., Inc.*, 171 Conn. App. 61, 158 (Conn. App. Ct. 2017)). "But unlike cases involving gradual environmental contamination or gradual progression of a disease, coverage for defective concrete foundation cases is not triggered until there is a 'collapse'—that is, until the point when the structure of the home became substantially impaired." *Id.* at *4 ("The 'collapse' itself did not occur innumerable times over the years, unlike the injuries or losses in environmental or disease cases."); *Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 401 n.3 (D. Conn. 2018) ("Sometime in the spring or summer of 2012, Michael and Annette Roberts noticed that a series of horizontal and vertical cracks had appeared in their basement's concrete walls . . . . [as a result, their] concrete deterioration 'became manifest' in 2012, within the period of Liberty Mutual's coverage.").

The Safeco policy does not include the phrases "multiple injury" or "continuous injury trigger." Rather, the policy defines "occurrence" as "an accident, including exposure to conditions which results in: a. bodily injury; or b. property damage; during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one

7

occurrence." Safeco, "Your New Safeco Homeowners Policy" at 34. At best, this language is ambiguous.

The Oliveiras urge the Court to resolve this ambiguity by adopting the Seventh Circuit's analysis in *Strauss v. Chubb Indemnity Insurance Co.*, 771 F.3d 1026 (7th Cir. 2014), and finding that Safeco's definition of "occurrence" provides for multiple or continuous trigger coverage. Pls.' Opp. at 10–12 (citing *Strauss*, 771 F.3d at 1032-1033). A finding that continuous or multiple injury trigger theory applies could mean that a triggering loss occurred both during the Safeco policy period and at the time the Oliveiras discovered the cracking in their basement. Connecticut courts have expressly rejected this line of argument with respect to similar—though not identical—contract language. *Dino v. Safeco Ins. Co. of Am.*, No. CV166010428S, 2018 WL 3518587, at *11 (Conn. Super. Ct. June 28, 2018) (factually distinguishing the plaintiffs' policy language from the language in Strauss but ultimately holding, on law and policy grounds, "that a manifestation trigger of coverage theory applies to the plaintiffs' claims against the defendants"). But even if a manifestation theory applies here, it is possible that the loss was "reasonably capable of diagnosis" during the period of Safeco's coverage for purposes of establishing coverage, *Sec. Ins. Co. of Hartford*, 264 Conn. at 698, n.12, and that the suit limitation did not begin until the Oliveiras actually discovered the cracking.

In any event, the courts of Connecticut and within this District typically resolve contract ambiguities at the summary judgment stage, on a fuller factual record. *See Dino*, 2018 WL 3518587, at *15 (finding, after considering plaintiffs' testimony and finding expert testimony inadmissible, that there was not enough evidence "to enable a jury to pinpoint the date when a reasonable homeowner should have realized there was there was a problem that warranted placing the homeowners [sic] insurer on notice"); *Kowalyshyn*, 2018 WL 888724, at *3–4

("Because I conclude that no reasonable jury could find that Peerless breached its contract, plaintiffs' claims that Peerless violated the implied covenant of good faith and fair dealing and CUTPA/CUIPA also fail. Accordingly, I will grant Peerless's motion for summary judgment in its entirety."); *cf. Roberts*, 2015 WL 7458510, at *1, 5 ("On August 13, 2015, ruling from the bench, I granted Amica's motion to dismiss, holding that the matter was time-barred due to the Roberts' failure to 'start' an action against Amica within the insurance contract's contractual suit limitations period. . . . Because there is only one reasonable interpretation of the term 'started' in the Suits Against Us provision, I hold that the term is unambiguous.").

Because Safeco's contract contemplates property damage coverage for "[r]epeated or continuous exposure," Safeco, "Your New Safeco Homeowners Policy," at 34, and more than one reasonable interpretation of that language is possible, the contract could provide for continuous trigger coverage. Additionally, even if the Court finds that a manifestation trigger theory applies, it is possible that the damage manifested within the period of Safeco's coverage while the suit limitation provision was not triggered until the Oliveiras actually discovered the cracking in their basement. As a result, the Court finds that the Oliveiras have stated "a plausible claim for relief [that] survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

Accordingly, the Court will not dismiss this lawsuit as untimely, at least at this time.

**B.     Breach of Contract Claims**

"[I]nsurance policies are construed and enforced under principles of contract law." *Discuillo*, 2019 WL 499255, at *2. Their "language should be construed in favor of the insured unless it has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim." *Liberty Mut. Ins. Co. v. Lone Star Indus.*, 290 Conn. 767, 795 (2009) (quoting *Kelly v. Figueiredo*, 223 Conn. 31, 37 (1992)). Courts should interpret insurance

contracts as lay people would. *Kim v. State Farm Fire & Cas. Ins. Co. (Kim III)*, 751 Fed. App'x 127 (2d Cir. 2018) (citing *Vt. Mut. Ins. Co. v. Walukiewwicz*, 290 Conn. 582, 592 (2009)).

The Oliveiras acknowledge that their Safeco policy excluded "losses caused by cracking, rust, or defective materials used in construction." Pls.' Opp. at 5 (emphasis omitted). They argue that the policy did not exclude the cracking itself, *id.* at 6 (arguing that "it cannot be said that the cracks were caused by cracking"), or the rust in their walls, because the rust damage was caused by deteriorating concrete not normal wear and tear. *Id*. at 7.

Safeco argues that the facts of this case are indistinguishable from *Kim v. State Farm Fire and Casualty Insurance Co.*, and that the Court thus should rule in its favor. Safeco Mem. at 6-7 (citing *Kim v. State Farm Fire & Cas. Co. (Kim II)*, 262 F. Supp. 3d 1 (D. Conn. 2017), *aff'd*, *Kim III,* 751 F. App'x 127).

The Court disagrees.

First, the Safeco policy is similar but not identical to the State Farm policy in *Kim*. *See Kim II*, 262 F. Supp. 3d at 3. As the Oliveiras note, the rust provision of their policy is different from the Kims' policy. Pls. Opp. at 7. Second, and unlike the Kims' policy, the Oliveiras' policy provides: "we do insure for any resulting loss from [rust . . . settling, cracking, et al.] unless the resulting loss is itself a Loss Not Insured by this Section." Safeco, "Your New Safeco Homeowners Policy" at 15.

Second, as with many of the cases discussed above, the court in *Kim* decided the case at the summary judgment stage. *Kim II*, 262 F. Supp. 3d at 2 ("After Defendant's Motion to Dismiss, the only remaining claim alleges breach of contract. Defendant has moved for summary judgment. [Dkt. 30.] For the reasons that follow, State Farm's Motion for Summary Judgment is GRANTED.").

10

In *Kim*, the court considered the extent of State Farm's coverage in light of the Kims' testimony, expert reports, and other evidence. *Id*. at 3–4 (summarizing record evidence including that "[t]he July 15, 2004 inspection report revealed foundation damage. . . . Plaintiffs indirectly admitted that they read the inspection report and were aware of the foundation damage caused by efflorescence, asserting that it was their understanding that the sellers of the Property completed the remedial measures to reduce surface water around the foundation suggested in the Inspection Report before Plaintiffs closed sale on the Property. G. Kim Dep. at 25," and that "[t]he consulting engineer, William F. Neal, P.E., employed by Residential Engineering Services, LLC, conducted a visual examination of the Property and sent Plaintiffs a letter reporting his findings on July 3, 2014. [Dkt. 32-33 at 1] . . . [and] concluded 'the most likely cause of the foundation distress is Alkali–Silica–Reaction (ASR)' which 'is a chemical reaction between alkali aggregate and silica in the concrete mix' and 'typically causes [the] type of distress [Plaintiffs' Property was experiencing] 15 to 20 years after the foundation is poured.'").

The decision in *Kim* thus suggests that whether Safeco breached its contract with the Oliveiras is an issue more appropriately decided at the summary judgment stage.

Accordingly, the Court will not dismiss the Oliveiras' breach of contract claim. *See Cohen*, 711 F.3d at 359 (explaining that at the motion to dismiss stage, courts view the allegations of the complaint in the light most favorable to the plaintiffs and draws all inferences in the plaintiffs' favor.).

C.    **Connecticut Unfair Insurance Practices Act (CUIPA) and Connecticut Unfair Trade Practices Act (CUTPA) claims**

A plaintiff may bring "a private cause of action under CUTPA to enforce alleged CUIPA violations." *Kim v. State Farm Fire & Cas. Co (Kim I)*, 2015 WL 6675532, at *5 (D. Conn. Oct. 30, 2015) (quoting *Mead v. Burns*, 199 Conn. 651, 663(1986)). CUTPA/CUIPA claims "are

premised on finding a breach of contract." *Kim III*, 751 F. App'x at 128 n.1; *Roberts*, 264 F. Supp. 3d at 416 ("Similarly, 'a claim for violation of CUTPA/CUIPA cannot succeed in the absence of a viable claim for breach of contract.'"); *Zulick v. Patrons Mut. Ins*. Co., 287 Conn. 367, 378 (2008) ("The foregoing analysis disposes of the plaintiffs' claim that the trial court improperly rendered summary judgment in favor of the defendant on the plaintiffs' CUTPA and CUIPA claims. Because we have concluded that the defendant's interpretation of the policy's coverage limitation was correct, there can be no genuine issue of material fact as to whether the application of that interpretation as a general business practice constituted oppressive, unethical or unscrupulous conduct in violation of the statutes.").

"In determining whether a practice violates CUTPA, we are guided by the criteria set out in the Federal Trade Commission's so-called cigarette rule: '(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons].'" *Id*. at 378 n.11 (quoting *Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 155 (2005)).

"CUIPA identifies and prohibits a number of 'unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.'" *Kim I*, 2015 WL 6675532, at *5 (citing CONN. GEN. STAT. § 38a-316.) "Among these are '[u]nfair claim settlement practices' such as 'not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.'" *Id*. (quoting CONN. GEN. STAT. § 38a-316(6)(F)). To prevail on a CUIPA claim, a plaintiff must show that "the unfair settlement

practice was committed or performed with such frequency as to indicate a general business practice." *McCulloch v. Hartford Life & Accident Ins. Co.*, 363 F. Supp. 2d 169, 182 (D. Conn. 2005).

Plaintiffs allege that Defendant violated CUTPA and CUIPA by failing, several times, to "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear as part of its general business practice." Am. Compl. ¶ 39; *id*. ¶ 38 (alleging that Safeco has refused "to provide coverage in at least three (3) other instances involving other homeowners experiencing the same damage caused by the same mechanism and involving policy language nearly identical to that in the plaintiffs' policy.").

Safeco argues that it "has an established general business practice of fair and correct claims handling," Safeco Mem. at 15, and that the three lawsuits cited by the Oliveiras in which Safeco denied similar claims are not enough to establish a general business practice of unfair claims handling because two of them ultimately resolved in Safeco's favor. *Id.* at 14.

The Court disagrees.

As with the other arguments pressed by Safeco, this issue is better addressed at the summary judgment stage, rather than now. In two of these cases, the court found that, at the summary judgment stage, there had been no coverage of the plaintiffs' claims. *See Gosselin v. Mass. Bay Ins. Co.*, No. TTD-CV-17-6011806-S (Conn. Super. Ct. Mar. 11, 2019) (unpublished order) ("[I]f there is no coverage under the policies the plaintiffs' claims for violation of CUTPA/CUIPA are not viable"); *Dino v. Safeco Ins. Co. of Am.*, No. TTD-CV-16-6010428-S, 2018 WL 3518587, at *21 (Conn. Super. Ct. June 28, 2018) ("Because the plaintiff's CUTPA/CUIPA claims rest upon the premise that the defendants' coverage determinations were unreasonable, and because the court has concluded there is no coverage under the policies issued

13

by Safeco…, an essential element of the CUTPA/CUIPA claims against them is lacking").

Those cases did not address whether the plaintiffs had established unfair business practices. Nor did those cases involve disputes over whether Safeco had actually denied the plaintiffs' crumbling concrete claims—Safeco had indeed denied those claims. On a similar motion to dismiss brought by an insurance company in a similar crumbling concrete case, a court in this District has stated that a "[p]laintiff must only allege that Defendant's conduct occurs with sufficient frequency to constitute a 'general business practice,' which is accomplished here by referencing other cases where insureds were similarly denied coverage for concrete decay claims. That is a different question than whether the cases Plaintiff cites resulted in a finding that these business practices were unlawful." *Clark v. Amica Mut. Ins. Co.*, No. 3:16CV1573 (JBA), 2018 WL 2725441, at *8 (D. Conn. June 6, 2018).

Additionally, although a plaintiff must show "more than a single act of insurance misconduct," *Karas v. Liberty Mut. Ins. Co.*, 33 F. Supp. 3d 110, 117 (D. Conn. 2014), "it is important to note that there is no 'magic number' of other instances that a plaintiff must allege to survive a motion to dismiss on an unfair settlement practices claim under CUIPA through CUTPA's enforcement provision; rather, the allegations must be considered in the context and circumstances presented by the entire complaint." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 167 (D. Conn. 2014); *see also Maki v. Allstate Ins. Co.*, 320 F. Supp. 3d 380, 385 (D. Conn. 2018) (denying motion to dismiss CUTPA/CUIPA claims without noting the number of times the defendants had allegedly refused to effectuate prompt, fair, and equitable settlements); *Metsack, et al. v. Liberty Mut. Fire Ins. Co., et al.*, 2015 WL 5797016, at *9-11 (D. Conn. Sept. 30, 2015) (denying a motion to dismiss CUTPA/CUIPA claims where plaintiff alleged five actions by defendants supporting a general business practice); *Gabriel v. Liberty Mut. Fire Ins.*

*Co.*, 2015 WL 5684063, at *5 (D. Conn. Sept. 28, 2015) (denying motion to dismiss CUTPA/CUIPA claim where plaintiffs alleged that the defendant and defendant's associated entities denied coverage in four similar instances); *Karas,* 33 F. Supp. 3d at 117 (denying motion to dismiss CUIPA/CUTPA claim where plaintiffs alleged that defendant denied coverage in three similar instances); Order on Motion to Dismiss, *Mensher v. Liberty Mut. Fire Ins. Co.*, No. 3:15-cv-01007 (WWE) (D. Conn. Oct. 28, 2015) ("ORDER denying … Motion to Dismiss [claims including CUTPA/CUIPA claims] for the reasons articulated in the rulings on the motions to dismiss in the analogous cases, *Gabriel*, 2015 WL 5684063 and *Metsack*, 2015 WL 5797016").

Finally, as with Plaintiffs' other claims, Plaintiffs' CUTPA/CUIPA claims are better suited for resolution at the summary judgment stage, after the parties had an opportunity to develop the record. *See Kowalyshyn*, 2018 WL 888724, at *4 ("Because I conclude that no reasonable jury could find that [defendant] breached its contract, plaintiffs' … CUTPA/CUIPA [claims] also fail."); *Metsack*, 2015 WL 5797016, at *9–11 ("Although [defendant] is entitled to present evidence establishing that its various related entities have approached 'concrete decay' claims independently and without a general business practice across related entities at the summary judgment stage of the proceedings, [p]laintiff has plausibly alleged a pattern of 'concrete decay' claims across related entities at this stage of the proceedings.").

Because the Oliveiras have alleged that Safeco denied coverage of similar claims in cases with similar factual circumstances, they have sufficiently alleged a general business practice of unfair settlement handling. The Court therefore finds that the Oliveiras have stated "a plausible claim for relief [that] survives a motion to dismiss," *Iqbal*, 556 U.S. at 679.

Accordingly, the Court will not dismiss the Oliveiras' CUTPA/CUIPA claims at this stage of the case.

## IV. CONCLUSION

For the reasons above, the Court **DENIES** Safeco's motion to dismiss.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of August, 2019.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE